RALPH MOORE CRESWELL, )
)            Williamson County Chancery
Plaintiff/Appellee )            No. 13878
)
VS. )            Appeal No.
)            01A01-9702-CH-00059
BILLIE CRESWELL DUFF, )
)
Defendant/Appellant )

FILED

October 1, 1997

Cecil W. Crowson
Appellate Court Clerk

IN THE COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE WILLIAMSON COUNTY CHANCERY COURT
AT FRANKLIN, TENNESSEE


HONORABLE HENRY D. BELL, CHANCELLOR



Karl D. Warden
2000 First Union Tower
150 Fourth Avenue North
Nashville, TN 37219-2425
ATTORNEY FOR DEFENDANT/APPELLANT

James L. Woodard
408 Main Street
P. O. Box 708
Franklin, TN 37064
ATTORNEY FOR PLAINTIFF/APPELLEE



AFFIRMED AS MODIFIED AND REMANDED



WILLIAM H. INMAN, SENIOR JUDGE


CONCUR:

HENRY F. TODD, PRESIDING JUDGE, MIDDLE SECTION
BEN H. CANTRELL, JUDGE

| RALPH MOORE CRESWELL, | ) | |
|---|---|---|
| | ) | **Williamson County Chancery** |
| **Plaintiff/Appellee** | ) | **No. 13878** |
| | ) | |
| VS. | ) | **Appeal No.** |
| | ) | **01A01-9702-CH-00059** |
| **BILLIE CRESWELL DUFF,** | ) | |
| | ) | |
| **Defendant/Appellant** | ) | |

## O P I N I O N

This complaint was filed July 17, 1978, by a Conservator seeking an accounting from a Trustee - Executrix.

The defendant was appointed guardian of Ralph Moore Creswell ["Creswell"] in 1973 and Trustee in 1974 by the County Court of Williamson County. Her accounting to the County Court is challenged in this action. The case languished for eighteen (18) years and was finally heard on October 10, 1996. Creswell was awarded $15,412.74 and pre-judgment interest from July 17, 1978 at 10% per annum.

The complaint alleges that Creswell was mentally retarded and unable to manage his affairs, giving rise to the appointment of the fiduciary. His estate of about $55,000.00 was inherited from his father, Roy Creswell, whose estate was administered by the defendant.

The defendant was appointed guardian of Roy Creswell on December 13, 1973. He died March 1, 1974. She was appointed Executrix of his estate and filed an accounting showing expenditures during her guardianship of $4,295.74, with the balance of $19,421.08 being paid over to herself as Executrix.

On August 15, 1974, the County Court Clerk took and stated the Executrix' account. He charged her with the sum of $52,920.58, which included the

guardianship funds, and credited her with disbursements of $14,895.98, leaving $38,024.50 to be turned over to the defendant as Trustee for Ralph Creswell. This stated account reflects that the disbursements were verified by canceled checks.

On November 12, 1975, a Report was filed in the County Court by T. H. Alexander, attorney for the defendant, alleging various disbursements, including one to himself in the amount of $2,500.00. This Report was not signed by the defendant and was not approved by the Court. It is, for both reasons, inefficacious.

On November 18, 1976, the defendant filed a Report with the County Court showing $12,301.92 on hand and $7,660.00 in disbursements, with a balance of $4,641.50.

On July 17, 1978, the defendant, as Trustee, filed her 'final accounting' with the Clerk and Master.[1] This accounting reveals disbursements of $11,106.76, which was delivered to Marion Holder, successor trustee. A difficulty with this purported final accounting is that it is unsigned, but it was apparently accepted for filing by the Clerk and Master.

To the complaint the defendant filed an answer denying all alleged improprieties and asserting that all disbursements she made in a fiduciary capacity were justified.

On October 2, 1978, the Chancellor appointed Melvin Spain, a C.P.A., as Special Master to take and state the accounts of the defendant fiduciary.

The Special Master, on November 20, 1980, filed a statement of accounts which was not represented as having been prepared in accordance with accepted accounting principles. Because the defendant kept meager records, and because

_____

[1]Successor to the County Court Clerk as Probate Clerk.

3

in the passage of time receipts, vouchers and canceled checks were lost, the Special Master struggled to submit a Report which would reflect even a modicum of the fiduciary's receipts and disbursements. The struggle continued with the Chancellor, who concluded that a recovery of $15,412.74 should be allowed because the defendant failed to present justifying vouchers for disbursements which aggregated this amount.

The defendant appeals and presents for review the issues that:

(1)     The trial court erred in not applying laches;

(2)     The trial court applied inconsistent standards to determine the propriety of payments to the Special Master vis-a-vis to the defendant, her attorney and family;

(3)     The trial court should not have allowed pre-judgment interest.

## ISSUE NO. 1

With respect to the defense of laches, Rule 8.03 requires that affirmative defenses, of which laches is one, must be specially pleaded. In light of the fact that this defense was not specially pleaded, we are unable to notice it further.

## ISSUE NO. 2

The Special Master submitted his statement for services to the Court, which approved it, as contrasted to the payments made by the defendant to her attorney and her family members, none of which was approved by the Probate Clerk or by the County Judge. We see no inconsistency here.

## ISSUE NO. 3

T. C. A. 47-14-123 authorizes pre-judgment interest, not to exceed 10% per annum, in the nature of damages to be awarded in accordance with the principles of equity. The allowance of such interest is discretionary, <u>B. F. Myers & Son v.</u>

4

Evans, 612 S.W.2d 912 (Tenn. Ct. App. 1980), and a judgment allowing it will not be reversed absent a showing of an abuse of discretion. Otis v. Cambridge Mutual Ins. Co., 850 S.W.2d 439 (Tenn. Ct. App. 1992). The evidence reveals that the defendant paid out various sums to attorneys and to members of her family without prior or subsequent approval and paid herself an 'advance' of $2,000.00 on a projected fee. Such peccadilloes may well have been partly attributed to her lawyers, as she claims, but obviously this reason may not serve to exonerate her. But we are concerned with the inordinate length of time this complaint languished in the trial court before it was scheduled for trial - 18 years, and the allowance of 180 % interest on the recovery jars our notion of equity, as does the lackadaisical attitude of the defendant to her fiduciary duties. The evidence fairly indicates that she paid herself and members of her family $8,930.00 during her fiduciary tenure, and we think she should pay interest on this amount at the rate of 6% per annum for three years. The oneration of 10% for 18 years on the full amount is, we believe, an abuse of discretion.

The judgment is modified accordingly, and as modified is affirmed. Costs are assessed to the parties evenly.

_____
William H. Inman, Senior Judge

CONCUR:


_____
Henry F. Todd, Presiding Judge, Middle Section


_____
Ben H. Cantrell, Judge

5