**Mr. and Mrs. Hyse Thurman ALSUP, Plaintiffs-Appellees,**

**v.**

**Mildred W. BELL and Arch Bell, Defendants-Appellants.**

Court of Appeals of Tennessee, Middle Section.

Feb. 5, 1981.

Certiorari Denied by Supreme Court April 13, 1981.

Rondal T. Wilson, Shelbyville, for plaintiffs-appellees.

James W. Buckner and Royce Taylor, Murfreesboro, for defendants-appellants.

## OPINION

LEWIS, Judge.

Defendants have appealed from a judgment of the Trial Judge, sitting without the intervention of a jury, awarding plaintiffs $12,218.85 for the wrongful death of their son.

The facts material to a decision in this case are as follows: Plaintiffs live in a house that sits on a rise above Highway 231 in Rutherford County, Tennessee, approximately one mile south of the Rutherford-Wilson County line. Plaintiffs' driveway is cut through a rock embankment and it is approximately twenty feet from the embankment to the edge of Highway 231.

Defendant Mrs. Bell was operating an automobile owned by her husband defendant Arch Bell on April 26, 1974, at approximately 7:30 to 7:45 A. M. when the automo-

bile collided with plaintiffs' decedent. Five other ladies were in the automobile with Mrs. Bell and they were on their way to Bomar to a missionary society meeting.

Plaintiffs' decedent at the time of the accident was seventeen years old, five feet and seven inches tall, and weighed approximately two hundred and ten pounds. He was a student at Oakland High School and at the time of the accident was on his way to catch the school bus. He would normally go down the driveway, across Highway 231, and proceed approximately one hundred yards to old Highway 231 where he would catch the school bus.

Bertland L. Taylor, the only eye witness to testify, gave the following account of the accident. At the time the accident occurred he was alone in his automobile and was some fifty to seventy-five feet behind Mrs. Bell's automobile. He had followed the Bell automobile for a half mile or more, waiting for an opportunity to pass. The Bell automobile was traveling at about fifty miles per hour, and he first saw plaintiffs' decedent "about—just a blink before he was hit. I mean, just a fraction of a second seems like, it was just—he was very fast. You saw the boy and, say in one frame, and the next frame he'd been hit." Plaintiffs' decedent was about six to ten feet from the edge of the pavement and going at "a full run." He never slowed or veered to the left or to the right before colliding with the Bell automobile at "the right front part of the car. Looked like maybe toward—somewhere between the headlight and the windshield." Nothing was between the embankment and the highway to have obstructed Mrs. Bell's vision.

The weather at the time of the accident was clear and dry. There is a slight curve from the crest of the hill south of plaintiffs' driveway to the driveway, but the view from the crest of the hill to the driveway is unobstructed for some five to six hundred feet.

Mrs. Bell testified that she never saw plaintiffs' decedent prior to the impact and that at some point after the impact, one of the ladies told her, "You struck a boy."

After the impact, she went up the road a short way, then turned around and came back.

Defendant's first issue is: "Did the Court err in concluding that the defendant, Mrs. Mildred W. Bell, was not keeping a proper lookout ahead in driving her automobile?"

The Trial Judge found that the defendant never

at any time saw the deceased (who was 5 feet seven inches tall and weighed over 200 pounds), even when he hit her windshield. She never slowed or swerved or did anything whatsoever to avoid the collision. . . .

The Trial Judge, in his Memorandum, states, and we agree, that "[t]he conclusion is inescapable that she was not keeping a proper lookout ahead, for some reason not explained by the evidence."

■■■ Mrs. Bell's own testimony is that she failed, on a clear and sunny day, to see the plaintiff's decedent at all until after the accident occurred. She never became aware of plaintiffs' decedent until she heard a "thud" on the windshield of her car. She at no time took evasive action and did not even know what had broken her windshield until after one of the passengers in her car stated, "You hit a boy." The preponderance of the evidence clearly sustains the Trial Court's finding that Mrs. Bell was negligent in failing to keep a proper lookout. This finding must be affirmed by this Court since we find no evidence preponderating against the finding. *Smith v. Jarnagin,* 58 Tenn.App. 668, 436 S.W.2d 310 (1968); TRAP Rule 13(d).

Defendants' issues two and three, which we discuss together, are as follows:

2. Did the Court err in applying the last clear chance doctrine after determining that the plaintiffs' decedent was undoubtedly negligent?

3. Did the Court err in rendering a judgment in favor of plaintiffs, and against defendants, awarding damages for the alleged wrongful death of Hyse Eugene Alsup?

The Trial Judge found as a fact that plaintiffs' decedent was "negligent in entering upon the highway as a pedestrian when a car was coming. The car, by the nature of things, had to be visible to him *had he looked.*" (emphasis supplied). From a review of this record it is inescapable that plaintiffs' decedent was guilty of such contributory negligence as would bar a recovery notwithstanding defendant's negligence, unless the last clear chance doctrine can be applied as the Trial Judge did.

Tennessee has adopted Restatement (Second) of Torts §§ 479–480 [1] and overruled all cases in conflict with the principles of §§ 479–480. *Street v. Calvert,* 541 S.W.2d 576, 583–84 (Tenn.1976).

The Trial Judge, in his Memorandum Opinion and Judgment, after finding that both plaintiffs' decedent and Mrs. Bell were guilty of negligence, stated:

It is the holding of the Court that after the negligence of the deceased had placed him in a position of peril from which he could not extricate himself that the defendant driver, who in the exercise of ordinary care could and should have seen the pedestrian approaching the highway at a pace that negated any idea that he would or could stop, should have swerved to the left sufficiently to have avoided the collision. It is the opinion of the Court, from all of the evidence, that such a saving maneuver could have been executed effectively and safely had the defendant driver observed the approaching pedestrian, as she could and should have. The Court sets damages at $12,218.85.

In describing plaintiffs' decedent as having "placed [himself] in a position of peril from which he could not extricate himself," the Trial Judge employed definitional language taken from § 479, Comment *c,* Restatement (Second) of Torts.[2]

Under § 479 defendant need not know in fact of the plaintiff's situation or peril; it is enough that defendant would discover the situation and thus have reason to realize the peril if he were to exercise the vigilance which he had a duty to exercise. § 479(b)(ii). The issue then before this Court is the correctness of the Trial Court's finding of fact that plaintiffs' decedent was helpless under the rule of § 479, rather than inattentive under the rule of § 480.

1. Restatement (Second) of Torts:

§ 479. Last Clear Chance: Helpless Plaintiff.

A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if, immediately preceding the harm,

(a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and

(b) the defendant is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm, when he

(i) knows of the plaintiff's situation and realizes or has reason to realize the peril involved in it or

(ii) would discover the situation and thus have reason to realize the peril, if he were to exercise the vigilance which it is then his duty to the plaintiff to exercise.

§ 480. Last Clear Chance: Inattentive Plaintiff.

A plaintiff who, by the exercise of reasonable vigilance, could discover the danger created by the defendant's negligence in time to avoid the harm to him, can recover if, but only if, the defendant

(a) knows of the plaintiff's situation, and

(b) realizes or has reason to realize that the plaintiff is inattentive and therefore unlikely to discover his peril in time to avoid the harm, and

(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm.

2. Comment on clause (a):

*c.* The rule stated in this Section is applicable only when the plaintiff has negligently placed himself in a position of peril from which he cannot, at the time of the accident, extricate himself. If the plaintiff's negligence consists in a failure to exercise that degree of vigilance for his own safety which as a reasonable man he is bound to exercise (as to which see § 464), he can recover, if at all, only under the rule stated in § 480. However, if at the time of the accident he is incapable of averting harm by the exercise of reasonable care, he can recover under the rule stated in this Section, even though his inability is because of some antecedent lack of preparation, since he is required to exercise with reasonable attention, care, and competence only such ability as he then possesses.

It is clear that under § 480 plaintiffs could not recover. Under § 480, defendant's unawareness of plaintiffs' decedent's situation or peril, even though defendant is negligent, bars recovery, because where defendant fails to discover the plaintiff's situation he has no superior opportunity to prevent the accident as long as plaintiff remains in a position to escape; so neither party has a "last clear chance" to avoid the accident. *See* W. Prosser, *Law of Torts* § 66 p. 431 (4th ed. 1971).

 Ordinarily, the question of whether a plaintiff is helpless or inattentive is one for the jury. *Street v. Calvert*, 541 S.E.2d at 585. This case being tried by the Court without the intervention of a jury, the finding of the Trial Court must be sustained unless it is contrary to the preponderance of the evidence. *Smith v. Jarnagin*, 58 Tenn. App. 668, 436 S.W.2d 310 (1968); TRAP Rule 13(d).

Bertrand Taylor, the only eye witness to the accident, testified that plaintiffs' decedent was running at a full run, that the time between plaintiffs' decedent's initial visibility and the moment of impact was "just a blink—just a fraction of a second," that plaintiffs' decedent did not slow down or veer to the left or to the right before running into defendant's automobile. Photographs of defendant's automobile show that the impact was to the side of the automobile on the right front fender, immediately behind the headlight and in front of the right front tire. Plaintiffs' decedent was some six to ten feet from the pavement edge when he first became visible so that plaintiffs' decedent would have covered some ten to fourteen feet between his initial visibility to Mr. Taylor and the point of impact.

 A helpless plaintiff is one unable to avoid an accident while an inattentive plaintiff is one unlikely, rather than unable, to extricate himself from a position of peril in which he placed himself. *Street v. Calvert*, 541 S.W.2d at 585. A plaintiff who remains in a position to escape "up to the point of the accident." is not a helpless plaintiff. W. Prosser, *Law of Torts* § 66 p.

431 (4th ed. 1971). In *Whaley v. United States*, 432 F.Supp. 37 (E.D.Tenn.1977), *aff'd* 598 F.2d 1038, the Court, in applying *Street v. Calvert*, determined that the plaintiff, who ran a stop sign and was struck by defendant who was speeding, was an inattentive plaintiff. The Court in *Whaley* cited *McFall v. Tooke*, 308 F.2d 617 (6th Cir. 1962), a case applying Kentucky law which held that a plaintiff walking across the highway without looking to the side was inattentive and not helpless to avoid the accident prior to the actual impact.

The Trial Judge found that if plaintiffs' decedent had looked he would have seen Mrs. Bell's automobile: "The car, by the nature of things, had to be visible to him had he looked." It is undisputed that Mrs. Bell was at all times prior to the impact unaware of plaintiffs' decedent's presence. It follows that she could not have been aware of plaintiffs' decedent's situation or peril and, therefore, did not have a superior opportunity to prevent the accident since plaintiffs' decedent remained in a position to escape up to the point of the accident "had he looked."

 We are of the opinion, after a careful review of this record, that the preponderance of the proof sustains the Trial Judge's findings that both plaintiffs' decedent and defendant Mrs. Bell were negligent but that the preponderance of the proof is that plaintiffs' decedent was "inattentive" rather than "helpless," that Mrs. Bell was unaware of plaintiffs' decedent's situation, and that, therefore, neither party had the "last clear chance" to avoid the accident.

For the reasons set out herein issue one is found to be without merit and issues two and three are sustained.

The judgment of the Trial Judge is reversed and the cause dismissed with costs to plaintiffs.

CANTRELL and CONNER, JJ., concur.